# In the United States Court of Federal Claims

|  |  |
|---|---|
| MELVIN MYLES, | |
| *Plaintiff,* | No. 21-1618C |
| v. | (Filed: June 24, 2022) |
| THE UNITED STATES, | |
| *Defendant.* | |

*Melvin Myles*, *pro se*, Atlanta, GA.

*Galina I. Fomenkova*, Civil Division, United States Department of Justice, Washington, DC, for Defendant.

## OPINION AND ORDER

**LERNER,** *Judge*.

Melvin Myles was administratively discharged from the United States Navy ("Navy") for misconduct related to unauthorized absences in 2005.  Twelve years later, he petitioned the Navy to correct his discharge records to reflect the undiagnosed post-traumatic stress disorder and depression he suffered after experiencing military sexual trauma ("MST"), which, he states, caused his unauthorized absences.  The Board for the Correction of Naval Records ("BCNR" or "Board") amended Mr. Myles's discharge records to an "honorable" discharge but did not change the narrative reason for his discharge to account for his disability.  He filed a claim in this Court for review of that BCNR decision, and the Government filed a Motion for Judgment on the Administrative Record under Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC").  *See* Def.'s Mot. for J. on the Admin. R. ("Def.'s Mot."), Docket No. 14.

All parties agree that the trauma Mr. Myles experienced during his military service mitigated his misconduct.  Yet, his struggle in the intervening decade to correct his service records has only been partially rewarded because of the Navy's stringent disability discharge requirements.  The Court is sympathetic to Mr. Myles's claim and acknowledges the barriers that prevent survivors of MST from reporting their experiences.  Nevertheless, this Court is bound by a limited scope of review over military correction boards.  Overall, the BCNR's decision to deny Mr. Myles's claim was supported by substantial evidence of Mr. Myles's condition at the time of his separation and was not contrary to Navy regulations.

For the following reasons, the Court **GRANTS** the Government's Motion for Judgment on the Administrative Record and **DENIES** Plaintiff's Cross-Motion and Motion to Supplement the Administrative Record.

## I.  Background

### A.  Factual Background

#### 1.  Naval Service

Mr. Myles enlisted in the Navy and entered active-duty service on February 4, 2004.  *See* Admin. R. ("AR"), Docket No. 13, at 4, 13.  He was assigned to the USS BATAAN, an amphibious assault ship stationed in Norfolk, Virginia.  AR 4, 120–24.  Soon after entering the service, Mr. Myles was "sexually assaulted and raped by a male shipmate in the bathroom stall of the ship."  AR 67, 73, 82; *see also* AR 28, 44.  Mr. Myles was told by his assaulter that "he would kill me if I told anyone about it," so he did not report the incident.  AR 67, 73, 82.  Around the same time, in January 2005, Mr. Myles learned that a close friend had died by suicide.  AR 67, 73, 82.  He also experienced significant marital issues with his wife, whom he had recently married before joining the Navy.  AR 82, 106; *see also* AR 45.  Mr. Myles's mental health deteriorated, and he twice attempted suicide.  AR 29, 67, 73.

Following one of these suicide attempts, Mr. Myles was taken to an emergency medical facility and met with a psychiatrist for a consultation.  AR 13, 28–29, 67, 73.  Mr. Myles reported "experiencing progressive anxiety and depressive symptoms over the past 7 months," as well as "occasional thoughts of harming some of his supervisors and passive fleeting thoughts of self-harm."  AR 29.  He was diagnosed with an "Adjustment Disorder with mild anxiety." AR 13.  According to Mr. Myles, "nothing got any better" after this diagnosis.  AR 21.  He noted that "I figured that after I was out of the military everything would be okay, so I decided to take a break[.]  [A]t that point I was not caring about anything or anyone anymore."  AR 68, 74, 83. Starting March 26, 2005, Mr. Myles did not report to military service for "a little over a month" before turning himself in on May 6, 2005.  AR 65, 68, 74, 83.  He was also absent from service for a shorter period in January of that same year.  AR 115.

While Mr. Myles's early Navy performance evaluations demonstrated "fully successful performance or better," his worsening mental health and attendance began affecting his position in the service.  AR 29, 41; *see, e.g.*, AR 124, 130.  Absences without leave ("AWOL" or "unauthorized absence") and missing movement are eligible for non-judicial punishment and court-martial under the Uniform Code for Military Justice ("UCMJ").  *See* AR 111, 115–16; UCMJ, Art. 86, 10 U.S.C. § 886 (2005) (describing the UCMJ offense of "absence without leave"); UCMJ, Art. 87, 10 U.S.C. § 887 (2005) ("Any person subject to this chapter who, through neglect or design, misses the movement of a ship . . . shall be punished as a court-martial may direct."); UCMJ, Art. 15, 10 U.S.C. § 815 (authorizing non-judicial punishment).

For the first unauthorized absence in January 2005, Mr. Myles received non-judicial punishment that required he forgo $500 of pay per month for two months and imposed "21 days of restriction with extra duties and a suspended pay grade reduction."  Def.'s Mot. at 2; AR 115. He was disciplined again after his month-long absence that began on March 26, during which he

also missed the USS BATAAN's movement from port.  AR 116; *see* AR 68, 74, 83; Def.'s Mot. at 2.  For this second unauthorized absence and for missing movement of the ship, he was court-martialed and sentenced to thirty days of confinement in the Navy brig, docked additional pay, and reduced in pay grade to E-1.  AR 47, 116, 133; *see also* AR 68, 74, 83.  His misconduct constituted a "serious offense" under Navy regulations, and he was administratively separated from the Navy for misconduct on July 22, 2005.  AR 138; *see* Naval Military Personnel Manual ("MILPERSMAN") 1910-142 (2005) ("Members may be separated based on commission of a serious military or civilian offense.").  He was discharged with a "General (Under Honorable Conditions)" characterization of service and a narrative reason of "Misconduct (Serious Offense)."  AR 138.

## 2.    Post-Separation and BCNR Proceedings

In the years following his discharge, Mr. Myles received his undergraduate degree and was intermittently employed.  *See* AR 68, 74, 83.  However, he also experienced homelessness and reported that he was "still mentally suffering in silence" but "could not afford to get any help."  AR 68, 74, 83.  He applied for medical care with the Department of Veterans Affairs ("VA"), where he was denied coverage multiple times.  AR 35–43, 70, 76, 85; *see* AR 23–43.

In 2017, Mr. Myles petitioned the Naval Discharge Review Board ("NDRB") and BCNR to change his characterization of service from "General (Under Honorable Conditions)" to "Honorable," and change the narrative reason from "Misconduct (Serious Offense)" to "Mental Health Conditions."  AR 52, 65–67, 72–73, 81–85.  He contended that "his undiagnosed post-traumatic stress disorder (PTSD) caused by a Military Sexual Trauma incident and Depression" mitigated his conduct.  AR 54.[1]

This petition was denied for two reasons.  *See* AR 63.  First, the BCNR held it "lacked evidence to find that [Mr. Myles was] unfit for continued naval service" based on his employment and ability to complete a college degree in the years following separation.  *Id.*  It noted that "[t]his was strong evidence to the Board that [he was] capable of performing the duties of [his] office, grade, rank or rating despite any disability conditions that may have existed at the time."  *Id.*  Second, the BCNR claimed that Navy regulations precluded it from changing the narrative reason on his discharge because his then-diagnosis of an adjustment disorder "did not qualify for referral to the Disability Evaluation System."  *Id.*  Further, "even if there was evidence that [he was] suffering from a qualifying disability," the BCNR highlighted that "[d]isability regulations directed that separation processing for misconduct which may qualify for an Other than Honorable characterization supersede disability processing."  AR 63–64.[2]

---

[1]  "The Department of Veterans Affairs (VA) uses the term 'military sexual trauma' (MST) to refer to experiences of sexual assault or repeated, threatening sexual harassment experiences while on federal active duty, active duty for training, or inactive duty training."  AR 57.

[2]  Additionally, the BCNR could have denied Mr. Myles's petition on statute of limitations grounds but waived this issue.  AR 63.

In 2018, following appeal proceedings, the VA approved Mr. Myles for disability treatment. AR 35–43; *see* AR 23–35, 76, 85. A psychiatrist with the VA diagnosed him with major depressive disorder and post-traumatic stress disorder ("PTSD"), and noted that "the PTSD was related to [MST]." AR 13. Mr. Myles was awarded benefits for service-connected disability and rated under the VA rating system with a combined seventy percent rating, which was later elevated to eighty percent. AR 4, 45.

Two years later, Mr. Myles again petitioned the BCNR with evidence of the 2018 VA proceedings that granted him service-connected disability benefits. AR 21. This time, the BCNR sought a mental health advisory opinion from a Navy Physician Advisor on whether "Petitioner's record indicate[s] behavior associated with victims of MST." AR 20. The Physician Advisor reviewed Mr. Myles's service records and did not find any "entries of sexual assault, or diagnoses of Major Depression or PTSD." AR 44. However, the Physician Advisor did find "behavioral markers that may be found in victims of MST" and highlighted Mr. Myles's treatment with the VA since 2017, his testimony about the sexual assault, and the emergency department psychiatry consultation that diagnosed Mr. Myles with an adjustment disorder. AR 44–45.

The Physician Advisor concluded that "Petitioner's in-service records do contain direct evidence of psychological or behavioral changes that may have indicated MST," and "Petitioner's description of [his past] behaviors and psychological symptoms while he was on active duty are sufficiently detailed that they do lend credibility to Petitioner's contention" that he experienced MST. AR 45. Overall, it was the Physician Advisor's "considered medical opinion that there is sufficient indirect evidence that Petitioner exhibited behaviors associated with victims of MST during his military service and that his misconduct may be mitigated by his experience of MST." *Id.*

The BCNR considered the Physician Advisor's report and granted Mr. Myles partial relief. First, the Board decided "that the interests of justice warrant upgrading the characterization of Petitioner's service to honorable," from a general (under honorable conditions) discharge. AR 14. A majority of the Board "found that Petitioner's misconduct was substantially mitigated by . . . his undiagnosed mental health conditions and his struggle with these conditions arising from the MST that he suffered." AR 13. However, while the BCNR found that these conditions warranted upgrading the characterization of Mr. Myles's service, it "found insufficient evidence to justify changing the narrative reason for his discharge," and observed that "while Petitioner's MST and PTSD certainly mitigated his conduct, they did not excuse it." AR 14. Lastly, similar to the first BCNR recommendation, the Board held that Mr. Myles "did not provide sufficient evidence that he suffered from a qualifying medical condition or disability that impacted his fitness for duty at the time of his discharge," and that, even if Mr. Myles had a qualifying mental health disability, Navy regulations precluded the Board from changing the narrative reason. *Id.*

In February 2021, Mr. Myles submitted a third petition to the BCNR in which he appealed the BCNR's partial denial. AR 6. He presented an updated summary of his VA benefits—reflecting that he was still receiving eighty percent compensation for his disability—and argued that the BCNR's partial grant was erroneous because it found that his mental illness

disability was enough to justify updating his discharge, yet not sufficient to amend the narrative reason. AR 6, 8. The BCNR again denied Mr. Myles's petition. AR 1–2. It found "no evidence that [Plaintiff's] disability condition impacted [his] inability to perform [his] duties." *Id.* In addition, the Board held that, regardless of his condition, Mr. Myles was "ineligible for disability processing" because "regulations direct misconduct processing to supersede[] disability processing when the misconduct qualified for a punitive or Other than Honorable discharge." *Id.*

### B.    Court of Federal Claims Complaint

Following this third denial, Mr. Myles filed a complaint in this Court. *See* Compl., Docket No. 1. The Government submitted the Administrative Record, *see* AR, and Motion for Judgment on the Administrative Record, *see* Def.'s Mot. Mr. Myles filed a Cross-Motion for Judgment on the Administrative Record and submitted exhibits to supplement the record. *See* Pl.'s Resp. and Cross Mot. for J. on the Admin. R. ("Pl.'s Resp."), Docket No. 19. Each party submitted a reply brief. *See* Def.'s Reply in Supp. of its Mot. for J. on the Admin. R. and Resp. ("Def.'s Reply"), Docket No. 20; Pl.'s Resp. to Cross Mot. for J. on the Admin. R. ("Pl.'s Reply"), Docket No. 24.

## II.    Discussion

### A.    Subject Matter Jurisdiction

The Tucker Act confers upon the Court of Federal Claims jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2022). Because the Tucker Act only waives sovereign immunity and does not create substantive rights, a plaintiff must identify a separate source of law that can be fairly interpreted as creating a right to money damages. *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005); *see also United States v. Navajo Nation*, 556 U.S. 287, 289–90 (2009).

Mr. Myles submitted a form complaint that only cites 28 U.S.C. § 1491(a)(2) of the Tucker Act. *See* Compl. at 1. While the Complaint does not specifically cite a money-mandating statute, such as 10 U.S.C. §1201 or the Military Pay Act, it does request past disability pay for what Plaintiff would have characterized as a disability discharge that "will then place [Mr. Myles] in Disability Retirement Status" and entitle him to disability benefits. Compl. at 5; *see Sawyer v. United States*, 930 F.2d 1577, 1578 (Fed. Cir. 1991) (holding that the disability retirement pay statute 10 U.S.C. § 1201 is a money-mandating statute); *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997) (holding that the Military Pay Act is a money-mandating statute).

Generally, there is "no duty on the part of the trial court to create a claim which plaintiff has not spelled out in his or her pleading." *El v. United States*, 144 Fed. Cl. 741, 748 (2019) (quotation marks omitted) (quoting *Lengen v. United States*, 100 Fed. Cl. 317, 328 (2011)). Nevertheless, "a document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up) (quoting *Estelle v.*

*Gamble*, 492 U.S. 97, 106 (1976)). This liberal construction applies even where a plaintiff does not specifically cite the basis for subject matter jurisdiction so long as their entitlement to money is clear. *See, e.g.*, *Banks v. United States*, 119 Fed. Cl. 254, 256 (2014) ("Thus, even though Plaintiff did not cite the Military Pay Act in his complaint, the Court will accept jurisdiction as if it had been cited."); *Avery v. United States*, 2012 WL 3854790, *4 (Fed. Cl. 2012) ("While [plaintiff's] complaint does not specifically cite its provisions . . . the Court may infer that he seeks relief for military back pay in accordance with its provisions.").

Here, Mr. Myles articulates a claim to amend his discharge records to reflect a disability retirement, which would entitle him to disability retirement benefits under 10 U.S.C. § 1201. *See* Compl. at 5; *see also, e.g.*, *LaBonte v. United States*, 150 Fed. Cl. 552 (2020) (determining that plaintiff's disability retirement, back pay, and retirement benefit claims after only a partial re-characterization of his discharge are based in 10 U.S.C. § 1201); *Sabree v. United States*, 90 Fed. Cl. 683, 694 (2009) (describing the difference between a claim for disability retirement under § 1201 and claim for wrongful discharge originating under the Military Pay Act). Liberally construed, this Court has subject matter jurisdiction under 10 U.S.C. § 1201, which is a money-mandating statute that permits this Court to grant monetary relief. *See Fisher*, 402 F.3d at 1174 (citing *Sawyer*, 930 F.2d).[3]

### B.    Motion for Judgment on the Administrative Record

The BCNR rejected Mr. Myles's appeal of his partial denial for two reasons. First, it found "no evidence that [Mr. Myles's] disability condition impacted [his] ability to perform [his] duties" and "concluded there was insufficient evidence to conclude [he was] unfit for continued naval service at the time of [his] discharge." AR 1–2. Second, regardless of Mr. Myles's fitness for duty, the BCNR held that he was "ineligible for disability processing" because "[d]isability regulations direct misconduct processing to supersede[] disability processing when the misconduct qualified for a punitive or Other than Honorable discharge." AR 2. On both points, the Government argues that the BCNR was supported by substantial evidence and moves for judgment on the administrative record. *See* Def.'s Mot.

### 1.    Standards of Review

The Court of Federal Claims reviews military correction board decisions using the administrative record compiled from the board proceedings. *Walls v. United States*, 582 F.3d 1358, 1367 (Fed. Cir. 2009). For cross-motions for judgment on the administrative record pursuant to Rule 52.1, this Court makes "factual findings . . . from the record evidence as if it were conducting a trial on the record." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1357 (Fed. Cir. 2005). The question is, "given all the disputed and undisputed facts in the administrative record, whether the plaintiff has met the burden of proof to show that the decision was not in

---

[3] The Government interprets Plaintiff's Complaint in the same manner. It notes that because "Mr. Myles is proceeding *pro se*, we presume that the purpose of this relief . . . is to obtain disability pay based on a disability discharge, and therefore, this suit encompasses a money-mandating statute." Def.'s Mot. at 7; *see also id.* at 8 ("Mr. Myles seeks a disability discharge from the Navy. The statutory authority for such a discharge lies in 10 U.S.C. § 1201.").

accordance with law." *Martinez v. United States*, 77 Fed. Cl. 318 (2007) (citing *Bannum*, 404 F.3d at 1357).

Decisions by military correction boards are reviewed under the same standard that applies under the Administrative Procedure Act. *Walls*, 582 F.3d at 1367; *see also Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006). Review is "limited to determining whether the action was arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which the complainant has been seriously prejudiced." *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983) (citing *Clayton v. United States*, 225 Ct. Cl. 593, 595 (1980)); *see also Sharpe v. United States*, 945 F.3d 1352, 1358–59 (Fed. Cir. 2019) (applying this standard to judicial review of military decisions). The standard has many definitions, but "when the standard is applied to military pay cases in [the Federal Circuit], the court is largely concerned with whether the correction board's decision is procedurally fair and supported by substantial evidence." *Miller v. United States*, 119 Fed. Cl. 717, 726 (2015) (citing *Heisig*, 719 F.2d at 1156 & n.12). Deferential review is particularly important for the military, as justiciability concerns have long guided federal courts' recognition that the "responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province; and that courts cannot substitute their judgment for that of the military departments." *Heisig*, 719 F.2d at 1156.

Overall, this Court cannot reweigh the BCNR's determination. It may only consider whether the Board's conclusion was supported by "substantial evidence," which is evidence that "a reasonable mind might accept as adequate to support a conclusion." *Strand v. United States*, 951 F.3d 1347, 1351 (Fed. Cir. 2020) (quotation marks omitted) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Heisig*, 719 F.2d at 1156–57. "So long as the Board considered the relevant evidence and came to a reasonable conclusion, [courts] will not disturb the Board's decision." *Riser v. United States*, 97 Fed. Cl. 679, 683–84 (2011).

## 2. The BCNR's First Ground for Denial is Supported by Substantial Evidence

### a. Arguments by Party

The Government maintains that it is entitled to judgment on the administrative record because to qualify for disability retirement, Mr. Myles must have been "unfit to perform the duties of [his] office, grade, rank, or rating because of physical disability at the time of the discharge," and substantial evidence supports the BCNR's finding that Mr. Myles was not disabled or unfit for his duties at separation. Def.'s Mot. at 10–12. The Government contends that there is no inherent inconsistency in finding that Plaintiff's mental health conditions *mitigated* his misconduct yet did not render him *unfit* for duty, or that Mr. Myles was not disabled in 2005 despite currently receiving VA benefits. *See* Def.'s Mot. at 12–13.

In response, Mr. Myles asks this Court to change the narrative reason on his discharge record and place him on the Permanent Disability Retirement List. *See* Pl.'s Resp. at 1. He argues that the BCNR correctly claimed that it had enough information to warrant re-characterizing his discharge to honorable, but it erred by finding that it did not have enough information to update the narrative reason for the discharge. *See* Pl.'s Resp. at 3. Specifically,

Mr. Myles points to guidance by the Department of Defense to allow modification of discharges due to mental health conditions, sexual assault, or sexual harassment. *See* Pl.'s Resp. at 1. According to Mr. Myles, because his mental health condition mitigated his discharge, it should also impact his discharge narrative. Lastly, Mr. Myles notes that he was downgraded in rank because he was unfit for service and that he therefore met the disability definition. *See* Pl.'s Reply at 4.[4]

### b.  The BCNR's Fitness Determination

To receive a disability discharge, a servicemember must be "unfit to perform the duties of the member's office, grade, rank, or rating" at the time of the retirement. 10 U.S.C. § 1201 (2005); *see also* 10 U.S.C. § 1203 (authorizing disability discharge). The military's determination of whether a servicemember is fit is tied to the substantial evidence standard of review; "responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province." *Heisig*, 719 F.2d at 1156. Thus, if the BCNR had substantial evidence that Mr. Myles was fit for service, this determination must be upheld.

The disability statutes further provide that servicemembers are entitled to disability retirement only when they are unable to perform the duties of their pay grade "because of a physical disability"—meaning they are physically or mentally unfit to perform the duties of their role. 10 U.S.C. § 1201(a); *see, e.g.*, *Walker v. Dep't of the Navy*, 106 F.3d 1582, 1585 (Fed. Cir. 1997) (holding that a constructive demotion required that the plaintiff demonstrate they were physically fit to perform all duties at the time of reassignment); *Hoffman v. United States*, 108 Fed. Cl. 106, 117 (2012), *aff'd* 560 Fed. App'x 987 (Fed. Cir. 2014) (reviewing the BCNR's determination of fitness following a servicemember's illness and health treatment). Eligible "physical disability" is defined by regulation to include psychiatric disorders and mood disorders, but not adjustment disorders. *See* Secretary of the Navy Instruction ("SECNAVINST") 1850.4E, enclosure 8 (listing the "medical conditions and physical defects which are cause for referral into the Disability Evaluation System"); *id.* ¶ 8013 (listing disorders, including adjustment disorders, and noting "[t]hese conditions do not constitute a physical disability despite the fact they may render a member unable to perform his or her duties"). Finally, to prove unfitness based on disability, a servicemember must prove a disability rating of at least thirty percent at the time of his retirement. 10 U.S.C. § 1201(b)(3)(B); *see, e.g.*, *Gant v. United* States, 417 F.3d 1328, 1331 (Fed. Cir. 2005) (finding plaintiff ineligible for disability status because he had a rating of under thirty percent).

Mr. Myles brought three petitions to the BCNR and now challenges the BCNR's final denial. *See* Compl. At this stage, the BCNR considered all evidence in Mr. Myles's prior petitions, including his own statements, the Physician Advisor's report, VA records (and Mr. Myles's eighty percent VA disability rating), and Mr. Myles's service records. AR 1–2; *see* AR 12–16. These records detail Mr. Myles's misconduct consisting of unauthorized absences and missing ship movement. AR 4. They also show that during this same period, Mr. Myles was raped by an unknown shipmate while onboard the USS BATAAN, learned of a close friend's death by suicide, had significant marital troubles with his new wife, and sought treatment

---

[4] The page numbers cited to for Plaintiff's filings correspond to the page numbers generated by the Court's electronic case filing system. *See* Compl.; Pl.'s Resp; Pl.'s Reply.

following two suicide attempts.  AR 13–14, 27–45, 65–66, 67–70, 73–74, 82–83, 149.  The records contain favorable evaluation reports in 2004 and early 2005, as well as medical records related to Mr. Myles's psychiatric treatment in 2005.  AR 63–64.  These medical records document Mr. Myles's diagnosis of an adjustment disorder—which, in 2005, was not categorized as a condition constituting a disability.  AR 63–64;  SECNAVINST 1850.4E, ¶ 2016 (2002).  Lastly, the records demonstrate that, following his discharge, Mr. Myles obtained employment and completed an undergraduate degree, faced additional hardships, and was ultimately diagnosed with PTSD and major depressive disorder in 2018, thirteen years after discharge.  AR 13, 63–64.

After reviewing the record, the BCNR reported to Mr. Myles that it "found no evidence that your disability condition impacted your []ability to perform your duties or met the other criteria for finding of unfitness."  AR 1.  It further told him that "other than your misconduct, the Board found no evidence that you suffered from a mental health condition while on active duty."  AR 1–2.  While a disability determination also requires evidence of a disability rating of at least thirty percent at the time of the discharge, *see* 10 U.S.C. § 1201(b)(3)(B), the Board "found no evidence" of any disability at the time of Mr. Myles's separation.  AR 1–2.  Instead, it considered that he was diagnosed in 2018, not "while on active duty."  AR 2, 12.  From this, the Board found that Mr. Myles was still fit for duty at the time of his separation and thus did not qualify for a disability discharge.  AR 1–2.

### c.  Mr. Myles's Demotion in Rank Is Unrelated to Fitness

On the issue of fitness for duty, Mr. Myles points to his demotion in rank from E-3 to E-1 following his second unauthorized absence and after missing ship movement as evidence that he was unable to perform the duties of his rank.  *See* Pl.'s Reply at 4.  While it is true that Mr. Myles was "reduc[ed] to the pay grade of E-1," AR 133–34, this reduction was based on Mr. Myles's failure to perform due to his proficiency and stemmed from his misconduct, and not because of an inherent capability such as a disability.  Navy personnel are referred for a disability evaluation only when "a medical board [] has found the member's fitness for continued naval service questionable by reason of physical or mental impairment"—not each time a servicemember is demoted or reassigned.  SECNAVINST 1850.4E, ¶ 3201(a).

The "sole standard to be used" for disability determinations is whether the servicemember is unfit "because of disease or injury incurred or aggravated while entitled to basic pay."  *Id.* ¶ 3301.  This determination is "considered by relating the nature and degree of physical disability of the member to requirements and duties that member may reasonably be expected to perform in his or her office, grade, rank or rating."  *Id.*; *see generally Kelly v. United States*, 157 Fed. Cl. 114, 118–19 (2021) (describing considerations for disability fitness determination).  By contrast, Navy personnel may be reduced in rank both "as a punishment" under Article 15 and "by reason of incompetency," which is "when members have proven themselves not qualified to perform properly the duties of their rates."  MILPERSMAN 1450-010; *see* UCMJ, Art. 15, 10 U.S.C. § 815 (authorizing non-judicial punishment).

Mr. Myles was reduced in rank as a result of his non-judicial punishment under Article 15 and summary court-martial.  *See* AR 115–16.  Additionally, he was arguably not qualified to perform the duties of his rank because of his absences.  In either case, Mr. Myles was demoted

because of his failure to perform, not his inability to perform because of a disability.  Along with the rank reduction, Mr. Myles was also required to forfeit pay of "$500.00 per month for 2 months" for his first absence, which also included "restriction with extra duty for 21 days," and "$856.00 for one month" for his second absence.  AR 133–34.  These monetary sanctions and his demotion—or "reduction to the next inferior pay grade"—stemmed from Mr. Myles's UCMJ offenses and make no reference to disability.  AR 134.  Taken to its fullest extent, Mr. Myles's argument that he should qualify for disability because of his demotion would render a possible disability discharge for any servicemember that is demoted, regardless of the existence of a disability condition.  But Mr. Myles was not demoted for a disability and was never referred for a disability evaluation during this period.  Though he was unfit for his rank due to his misconduct, he was not unfit for reasons of disability.

### d.  Mr. Myles's VA Disability Rating Does Not Compel Disability Separation

Mr. Myles also argues that the BCNR failed to properly consider his eighty percent disability rating from the VA in determining his fitness for duty, which he says is relevant evidence.  *See* Compl. at 2; *Heisig*, 719 F.2d at 1157 ("Under the substantial evidence rule, *all* of the competent evidence must be considered, whether original or supplemental, and whether or not it supports the challenged conclusion.").  The BCNR considered Mr. Myles's VA rating for his disabilities but held that "neither were probative on the issue of whether [he was] unfit for continued naval service . . . [because] eligibility for compensation and pension disability ratings by the VA is tied to the establishment of service connection and is manifestation-based without a requirement that unfitness for military duty be demonstrated."  AR 2.  In the BCNR's view, the VA-established disability rating did not require a finding that Mr. Myles was unfit for military duty, and therefore did not compel a disability narrative.  *See* Def.'s Mot. at 12–13.

Cases vary on the relative weight to give to the VA's rating in military disability separation.  *Compare Stine v. United States*, 92 Fed. Cl. 776, 796 (2010)  ("[T]he Navy may—and routinely does—find that the [VA's] higher rating is not probative due to that agency's distinct rating standard."), *and Pomory v. United States*, 39 Fed. Cl. 213, 219 (1997) ("The fact that the Army gave little weight to the 1994 VA determination would not be arbitrary or capricious in light of the different purposes of the Army evaluation and the VA evaluation."), *with Valles-Prieto v. United States*, No. 20-589, 2022 WL 1251759, at *6 (Fed. Cl. Apr. 27, 2022) ("The Board dismissed plaintiff's disability rating, stating that the VA 'operates under a different set of laws.'  The Board therefore failed to consider relevant evidence in the form of plaintiff's disability rating when it failed to consider the rating in its findings and conclusion.") (internal citation omitted).

Regardless of how the BCNR weighs the VA rating, the BCNR is required to consider all relevant evidence—including VA ratings—but "it is not bound by them" because of the differing goals of each approach.  *Stine*, 92 Fed. Cl. at 795, *aff'd*, 417 F. App'x 979 (Fed. Cir. 2011).  Specifically, "the Navy takes a snapshot of the service member's condition at the time of separation from the service, while the [VA] evaluates and adjusts disability ratings throughout the individual's lifetime."  *Id.*  Because the VA's rating can reflect recent changes in disability conditions, especially for illnesses that manifest over time like PTSD, a VA rating does not necessarily indicate that the servicemember was disabled at the time of separation.  *Id.*  Overall,

so long as the BCNR considered Plaintiff's VA rating, the Board met the standard for review.
And here, the BCNR stated to Mr. Myles that it "considered your current combined VA rating."
AR 2.

### e.   The Department of Defense Guidance on Correcting Military Records Does Not Compel the BCNR's Outcome

Finally, Mr. Myles states that the BCNR should have been more deferential in
considering its determination given Department of Defense guidance that advocates for
modifications of discharges caused by mental health conditions, sexual assault, or sexual
harassment.  *See* Pl.'s Resp. at 1; Pl.'s Reply at 2; Pl.'s Reply Ex. B at 8–9 (Sec'y of Def.,
*Memorandum for Secretaries of the Military Departments, Supplemental Guidance to Military
Boards for Correction of Military / Naval Records Considering Discharge Upgrade Requests by
Veterans Claiming Post Traumatic Stress Disorder* (Sept. 3, 2014) (the "Hagel Memorandum")).

Mr. Myles is correct that as the Department of Defense has grappled with a history of
sexual trauma in the military branches, it has sought to "ensure[] fair and consistent standards of
review for veterans with mental health conditions, or who experienced sexual assault or sexual
harassment" that often went unreported.  Pl.'s Reply Ex. D at 13 (Sec'y of Def., *Memorandum
for Secretaries of the Military Departments, Clarifying Guidance to Military Discharge Review
Boards And Boards for Correction of Military / Naval Records Considering Requests by
Veterans for Modification of their Discharge Due to Mental Health Conditions, Sexual Assault,
or Sexual Harassment* (Aug. 25, 2017) (the "Kurta Memorandum")).  This guidance directs that
boards give "liberal consideration" to petitions like Mr. Myles's and "special consideration" for
VA "determinations which document PTSD or PTSD-related conditions connected to military
service."  Pl.'s Reply Ex. B at 10 (Hagel Memorandum).  In line with this guidance, Mr. Myles's
second BCNR petition did grant partial relief and re-characterized his separation to an honorable
discharge.  *See* AR 14 ("Applying the liberal consideration standard discussed above, the
Majority found that Petitioner's misconduct was substantially mitigated by the factors discussed
above, primarily his undiagnosed mental health conditions and his struggle with these conditions
arising from the MST that he suffered.").

However, while the Department of Defense guidance directs the BCNR to "fully and
carefully consider every petition based on PTSD," it "is not intended to interfere with or impede
the Board's statutory independence to correct errors or remove injustices through the correction
of military records."  Pl.'s Reply Ex. B at 8 (Hagel Memorandum).  The guidance only directs
that the BCNR follow a comprehensive procedure, but does not direct an outcome: The "liberal
consideration" given to all petitions "does not mandate an upgrade."  Pl.'s Reply Ex. D at 17
(Kurta Memorandum).  Therefore, the BCNR did not act in a manner contrary to law in granting
only partial relief, and this Court cannot substitute its judgment for the judgment of a military
correction board.  *Heisig*, 719 F.2d at 1156.

### f.   Substantial Evidence Supports the BCNR's Fitness Determination

Ultimately, the BCNR's determination that Mr. Myles was fit for duty at the time of his
discharge is supported by substantial evidence.  The BCNR determined that Mr. Myles was not
impaired by a disability that prevented him from active-duty service.  AR 1–2, 14.  Its decision

11

was based on his favorable evaluation reports, the unknown impact of his military sexual trauma, and his lack of a qualifying disability diagnosis following a psychiatric consultation at the time. AR 1–2, 12–14.  Each of these factors provide substantial evidence that "a reasonable mind might accept as adequate to support a conclusion" that Mr. Myles was fit for service.  *See Strand*, 951 F.3d at 1351 (quoting *Consol. Edison Co. of N.Y.*, 305 U.S. at 229).  It does not mean that Mr. Myles did not have PTSD or major depressive disorder at the time of his separation or that substantial evidence does not exist to also suggest that Mr. Myles was unfit for duty.  However, this Court can only deny the Government's motion if the BCNR failed to come to a reasonable conclusion after considering the relevant evidence, or otherwise acted in a manner that was arbitrary, capricious, or otherwise not in accordance with law.  *See Riser*, 97 Fed. Cl. at 683–84 (quoting *Heisig*, 719 F.2d at 1157).  And here, the BCNR's conclusion was not unreasonable.

### 3.  The BCNR's Second Ground for Denial Is Supported by Substantial Evidence

The BCNR's second ground for holding that Mr. Myles was "ineligible for disability processing" was predicated on its finding that "disability regulations direct misconduct processing to supersede[] disability processing when the misconduct qualified for a punitive or Other Than Honorable discharge."  AR 2.  On this point, too, the Government argues that the BCNR is supported by substantial evidence and did not act in a manner that was arbitrary, capricious, or contrary to law.  Def.'s Mot. at 9, 14–16.

#### a.  Mr. Myles's Misconduct Proceeding Precluded a Disability Discharge

Federal statutes authorize the Navy to issue servicemembers administrative discharges for either misconduct or disability.  *See* 10 U.S.C. §§ 1201–1203 (authorizing retirement and separation for physical disability); 10 U.S.C. § 1169 (2005) (authorizing discharges "as prescribed by the Secretary," "by sentence of a general or special court martial," or "as otherwise provided by law").  These statutes do not distinguish between misconduct or disability for narrative purposes when a servicemember qualifies for discharge based on both.  However, the disability regulation in effect at the time of Mr. Myles's separation instructed that "[p]rocessing for punitive discharge and processing for administrative discharge for misconduct takes precedence over processing for disability."  SECNAVINST 1850.4E, ¶ 1002(b) (2002).

Though "disability statutes do not preclude disciplinary separation," disciplinary or misconduct actions—such as "administrative involuntary separation for misconduct"— "normally supersede disability separation or retirement."  SECNAVINST 1850.4E, ¶ 3403(a); *see* Def.'s Mot. Ex. 2, at 1.  Stated differently, when Navy personnel qualify for separation for both disability and misconduct, the misconduct is the basis for separation.  *See Malcolm v. United States*, 752 F. App'x 973, 977 n.2 (Fed. Cir. 2018) (recognizing that SECNAVINST 1850.4E "mandate[s] that misconduct discharge proceedings take precedence over processing for disability") (citing *Malcolm v. United States*, No. 17-1417, 2018 WL 1770525 at *3 (Fed. Cl. 2018)).

The United States Court of Federal Claims has noted that this mandate does not prevent a plaintiff from receiving benefits in all instances, and that "a plaintiff might be able to establish

eligibility for benefits under SECNAVINST 1850.4E, ¶ 3414.b despite the misconduct discharge." *Malcolm*, 752 F. App'x at 977 n.2 (citing *Malcolm*, 2018 WL 1770525, at *3). Under this regulation, a servicemember that is unable to appreciate the nature and quality of their misconduct cannot be held responsible for their acts. *See Kelly*, 157 Fed. Cl. at 131 n.13 (citing SECNAVINST 1850.4E, ¶ 3414.b). However, this would not apply to Mr. Myles because he never presented an argument alleging that he could not be held responsible for his absences. *See id.*; *cf. Meyer v. United States*, 127 Fed. Cl. 372, 383 (2016) (describing how a "soldier may be discharged for misconduct despite having a medical condition that fails Army medical retention standards" unless, under Army regulations, "the medical condition is the direct or substantial contributing cause of the misconduct").

Mr. Myles did not have a disability diagnosis at the time of his discharge. While he was diagnosed with an adjustment disorder in 2005, adjustment disorders did not then qualify as a disability. *See* SECNAVINST 1850.4E, ¶ 2016. But even if he did have a qualifying disability during the administrative separation proceedings, SECNAVINST 1850.4E would have required that the discharge narrative be only for misconduct. *See Kelly*, 157 Fed. Cl. at 131 (citing *Malcolm*, 752 F. App'x at 977 n.2).

### b. Mr. Myles's Misconduct Proceeding Also Precluded Any Disability Processing

One of Mr. Myles's arguments for amending his discharge narrative is that he should have been medically examined for disability during his separation, but never received medical services. *See* AR 71–72, 77–78, 86–87. Typically, an active-duty servicemember with disability conditions will apply for evaluation by a physical evaluation board ("PEB"), which rates the level of disability under the VA rating system and processes the servicemember for disability discharge or retirement when he meets the requirements of 10 U.S.C. §§ 1201 and 1203. *See generally Barnick v. United States*, 591 F.3d 1372, 1374–75 (Fed. Cir. 2010) (explaining disability retirement process); *Walls*, 582 F.3d at 1365 (same). Mr. Myles allegedly was never examined by a PEB or received medical services beyond his psychiatric evaluation. *See* AR 67, 73.

But even if Mr. Myles was processed through a PEB prior to his discharge, disability regulations under SECNAVINST 1850.4E would have again mandated that his processing for misconduct supersede his disability processing:

> Whenever a member is being processed through the PEB and, *subsequently the member is processed for an administrative involuntary separation for misconduct*, disciplinary proceedings which could result in a punitive discharge, or an unsuspended punitive discharge is pending, or is pending separation under provisions that authorize a characterization of service of Under Other Than Honorable conditions (UOTH), *disability evaluation shall be suspended and monitored by the PEB.*

SECNAVINST 1850.4E, ¶ 3403(a) (emphasis added).

13

Therefore, even assuming that Mr. Myles were found to have a qualifying disability and disability processing were initiated through a PEB, the PEB proceeding would have been suspended and superseded by the misconduct-related proceedings. Ultimately, SECNAVINST 1850.4E forecloses disability processing. *Id.* The BCNR could retroactively re-classify Mr. Myles's discharge to "honorable" as a reflection of the characterization of service and "liberal consideration . . . for mental health conditions" that mitigated his misconduct. AR 2; *see* AR 14. But Mr. Myles's discharge, whether honorable or not, was always a misconduct discharge that could not be amended unless the Board found that Mr. Myles was not responsible for his misconduct—an issue Mr. Myles never contested. AR 2; *see Malcolm*, 752 F. App'x at 977 n.2 (citing *Malcolm*, 2018 WL 1770525, at *3).

### c. The Department of Defense Guidance on Correcting Military Records Only Applies to Characterization of Service

On this point, the BCNR also noted that "the liberal consideration policy for mental health conditions only applies to upgrades of characterization of service and not to obtaining military disability benefits." AR 2. The Department of Defense guidance on correcting discharges caused by mental health conditions, sexual assault, or sexual harassment is targeted to the correction of military records "for the purposes of upgrading [servicemember] discharges based on claims of previously unrecognized [PTSD]." Pl.'s Reply Ex. B at 8 (Hagel Memorandum). The guidance similarly notes that "[l]iberal consideration will be given in petitions for changes in characterization of service," and "will also be given in cases [where PTSD] . . . might have mitigated the misconduct that caused the under other than honorable conditions characterization of service." Pl.'s Reply Ex. B at 10 (Hagel Memorandum). But the guidance does not discuss applying this liberal consideration to discharge narratives. Updates to the Department of Defense guidance specifically highlight that:

> [c]hanges to the narrative reason for a discharge and/or an upgraded character of discharge granted solely on equity, injustice, or clemency grounds normally should not result in separation pay, retroactive promotions, the payment of past medical expenses, or similar benefits that might have been received if the original discharge had been for the revised reason or had the upgraded character.

Pl.'s Reply Ex. E at 20–21 (Sec'y of Def., *Memorandum for Secretaries of the Military Departments, Guidance to Military Discharge Review Boards and Boards for Correction of Military / Naval Records Regarding Equity, Injustice, or Clemency Determinations* (July 25, 2018) (the "Wilkie Memorandum")). This clarified that the Department of Defense guidance only applies to discharge characterization, and not discharge narratives that impact benefits. *Cf. Philippeaux v. United States*, No. 20-275, 2020 WL 7042908, at *9 (Fed. Cl. Dec. 1, 2020) ("By its own terms, [Department of Defense guidance] applies to petitions for changes in discharge characterizations, not to BCNR determinations with respect to disability benefits.").

### d. Mr. Myles Qualified for a Misconduct Separation

Lastly, the BCNR held that "[d]isability regulations direct misconduct processing to supersede[] disability processing when the misconduct qualified for a punitive or Other Than

Honorable discharge," and concluded that Mr. Myles's missing movement and absences made him eligible for an other than honorable discharge.  AR 2.  This finding is also consistent with military regulations, which authorize separation when a servicemember commits a serious offense.  *See* MILPERSMAN 1910-142.  Mr. Myles was convicted at summary court-martial and then administratively separated with the stated reason of "Misconduct (Serious Offense)."  AR 138; *see* AR 116.  The separation was administrative and he was originally awarded a general discharge, which was later re-characterized as honorable.  However, he qualified for an other than honorable discharge because, under the UCMJ, the maximum punishment for the misconduct underlying his separation included a punitive discharge.  *See* UCMJ, Art. 87, 10 U.S.C. § 887; MILPERSMAN 1910-142 ("Members may be separated based on commission of a serious military or civilian offense when . . . offense would warrant a punitive discharge per [the Manual for Courts-Martial, appendix 12].");  *Manual for Courts-Martial, United States* (2005 ed.), app. 12 (authorizing punitive discharge for missing movement); AR 138.

Overall, the BCNR's refusal to amend Mr. Myles's discharge narrative is supported by substantial evidence and not contrary to Navy regulations or law.  Mr. Myles was discharged for misconduct, which "supersede[s] disability separation or retirement," SECNAVINST 1850.4E, ¶ 3403(a), and therefore required a discharge narrative reflecting the same.  Accordingly, the Government's Motion for Judgment on the Administrative Record is **GRANTED**, and Plaintiff's Cross-Motion for Judgment on the Administrative Record is **DENIED**.

### C.    Motion to Supplement the Administrative Record

Finally, Mr. Myles attached documents to his Response brief with the request that the Court review and consider them alongside the Administrative Record.  *See* Pl.'s Resp. at 3, 4–11; Pl.'s Reply; *see also* Def.'s January 10, 2022 Status Rep., Docket No. 17 (demonstrating that Plaintiff indicated to Government counsel that he intended to "enter these 'relevant portions of my record' into evidence").  While Mr. Myles did not submit a formal "Motion to Supplement the Administrative Record," under a liberal pleading standard for *pro se* plaintiffs, this Court will construe this request as a motion to supplement.  *See Erickson*, 551 U.S. at 94 ("[A] document filed *pro se* is to be liberally construed.") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  The Government objects to admitting the documents because Mr. Myles did not provide them in his BCNR submission even though they were in his possession.  *See* Def.'s Reply at 4–7.

### 1.    Standard of Review

The administrative record of the proceedings below "must be certified by the agency and filed with the court."  RCFC 52.1(a).  Parties are permitted to supplement the record with additional evidence, but their ability to do so is limited because of the restricted scope of judicial review.  *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009).  The "focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."  *Camp v. Pitts*, 411 U.S. 138, 142 (1973).  This prevents courts from "using new evidence to convert the arbitrary and capricious standard into effectively de novo review," which is not the standard of review for military decisions in the Court of Federal Claims.  *Axiom*, 564 F.3d at 1380 (quotation marks omitted) (citing *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000), *aff'd*, 398 F.3d 1342 (Fed. Cir.

2005)); *see also Walls*, 582 F.3d at 1367 ("[I]t has become well established that judicial review of decisions of military correction boards is conducted under the APA.").

Therefore, supplementing the administrative record is only permitted in "cases in which the omission of extra-record evidence precludes effective judicial review." *Axiom*, 564 F.3d at 1380 (quotation marks omitted) (citing *Murakami*, 46 Fed. Cl. at 735). The party with new evidence must "explain why the evidence omitted from the record [would] frustrate[] judicial review as to the ultimate question of whether [the agency decision] was arbitrary and capricious." *AgustaWestland N. Am., Inc. v. United States*, 880 F.3d 1326, 1332 (Fed. Cir. 2018) (citing *Axiom*, 564 F.3d at 1379–80).

## 2.    The Supplementary Evidence Cannot Be Admitted

There are two reasons that Mr. Myles's request to supplement the record cannot be granted. First, as the Government argues, Mr. Myles could have submitted this evidence to the BCNR but failed to do so. *See* Def.'s Reply at 5. This prevents the evidence from being added to the administrative record now. *Barnick*, 591 F.3d at 1382 ("[W]here evidence could have been submitted to a corrections board and was not, the evidence is properly excluded by the Court of Federal Claims.") (citing *Walls*, 582 F.3d at 1368).

Included among Mr. Myles's submission are documents from his January 2005 emergency department psychiatric consultation and other records from medical care received during his military service. *See* Pl.'s Resp. at 4–11. Although they were considered by the VA during his VA benefit proceedings, Mr. Myles did not include them in his BCNR petitions. *See* AR 45. Mr. Myles also appeared to reject the Government's offer to stay proceedings in this case to provide him an opportunity to submit these records to the BCNR at this point. *See* Def.'s Reply at 5; Def.'s January 10, 2022 Status Rep. Because the records were never submitted to the BCNR, they are not in the administrative record and the evidence cannot be considered now. *Barnick*, 591 F.3d at 1382. To do so would effectively require de novo review. *See Axiom*, 564 F.3d at 1379–80.

Second, Mr. Myles has not demonstrated why exclusion of this evidence would frustrate effective judicial review. *See AgustaWestland*, 880 F.3d at 1332. Because the BCNR did not have the evidence in the first instance, the records have little impact on the question of whether the BCNR's refusal to correct Mr. Myles's military records was supported by substantial evidence. While the records provide additional support that Mr. Myles suffered from a mental health disability during his military service, they do not offer any basis to challenge the BCNR's decision as arbitrary, capricious, or contrary to law.

For example, the records support what the BCNR already held—that Mr. Myles had "undiagnosed mental health conditions . . . arising from the MST that he suffered." AR 14. But they do not require a finding that the BCNR's determination lacked substantial evidence, or that the BCNR procedurally erred in applying the Navy regulation that precluded re-designation of this discharge. Mr. Myles essentially asks this Court to re-weigh the evidence that was before the Board and make its own determination on the merits using new evidence. This Court cannot do so. *See Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002) ("[T]he substance of [military] decisions, like many other judgments committed to the discretion of government

16

officials, is frequently beyond the institutional competence of courts to review.") (citing *Voge v. United States*, 844 F.2d 776, 780 (Fed. Cir. 1988); *Taylor v. United States*, 199 Ct. Cl. 171, 174 (1972) ("This court will not reweigh the evidence presented at plaintiff's court-martial in order that it might substitute its judgment for that of the military trial court.").

Therefore, Plaintiff's request to supplement the administrative record with additional medical records of his military service is **DENIED**.

### III.    Conclusion

For the reasons set forth above, the Government's Motion for Judgment on the Administrative Record is **GRANTED**.  Plaintiff's Cross-Motion for Judgment on the Administrative Record and Motion to Supplement the Administrative Record are **DENIED**.  The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

 s/ Carolyn N. Lerner
CAROLYN N. LERNER
Judge